UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

JUN 2 3 2005

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-355-GWU

DUWAYNE TROXTLE,                                                    PLAINTIFF,

VS.                              **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                   DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI). The appeal is currently before the Court on cross-motions

for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.  Is the claimant currently engaged in substantial gainful activity?
    If yes, the claimant is not disabled. If no, proceed to Step 2.
    See 20 CFR 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical
    or mental impairment(s)? If yes, proceed to Step 3. If no, the
    claimant is not disabled. See 20 CFR 404.1508, 416.908.

3.  Does the claimant have any severe impairment(s)--i.e., any
    impairment(s) significantly limiting the claimant's physical or
    mental ability to do basic work activities? If yes, proceed to

1

Troxtle

Step 4.  If no, the claimant is not disabled.  See 20 CFR 404.1520(c), 404.1521, 416.920(c), 461.921.

4.     Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).

5.     Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.  See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.     Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  See 20 CFR 404.1520(e), 416.920(e).

7.     Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.    See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

2

Troxtle

evidence" is "more than a mere scintilla[; i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. . ." Wright v. Massanari, 321 F.3d 611, 614 (6th Cir. 2003) (quoting Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir. 1981). It is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these

3

symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be

4

considered against the plaintiff, Hale v. Secretary of Health and Human Services,
816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford
or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242
(6th Cir. 1990).

    Additional information concerning the specific steps in the test is in order.

    Step six refers to the ability to return to one's past relevant category of work.
Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to
make out a prima facie case by proving that he or she is unable to return to work.
Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th
Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that
an individual with only off-and-on work experience is considered to have had no work
experience at all. Thus, jobs held for only a brief tenure may not form the basis of
the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

    Once the case is made, however, if the Commissioner has failed to properly
prove that there is work in the national economy which the plaintiff can perform, then
an award of benefits may, under certain circumstances, be had. E.g., Faucher v.
Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the
ways for the Commissioner to perform this task is through the use of the medical
vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and

5

analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term

6

"framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Duwayne Troxtle, was found by an Administrative Law Judge (ALJ) to have unspecified "severe" impairments. (Tr. 26). However, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Troxtle retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 26-31). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE a series of hypothetical questions. The first hypothetical question, based on a physical functional capacity assessment by Dr. Jeff Reichard, a one-time examining physician, and a mental functional capacity assessment by a one-time examining psychologist, Dr. Gary Maryman, asked the VE whether jobs would be available for

7

a person who was restricted from lifting more than 20 pounds occasionally, and who also had the following non-exertional impairments. (Tr. 140). He: (1) could not stand or walk over four hours per day; (2) could not sit longer than six hours a day; (3) could occasionally bend, squat, crawl, climb, or reach overhead, and (4) had a "seriously limited but not precluded" ability to deal with the public, to deal with work stresses, and to understand, remember and carry out complex job instructions. (Tr. 139-40). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 140-1).

The ALJ also asked a second hypothetical question based on Dr. Maryman's psychological restrictions, along with the physical restrictions of the plaintiff's treating surgeon, Dr. Lisa DeGnore. This question asked whether the plaintiff could perform any jobs if he were limited to lifting and carrying 5 to 10 pounds occasionally, and had the following non-exertional impairments. (Tr. 141-2). He: (1) could stand or walk no more than one hour in an eight-hour day; (2) would have no impairment in sitting; (3) could not climb, balance, stoop, or crouch; (4) could occasionally kneel or crawl; and (5) needed to avoid heights and moving machinery. (Tr. 142). The VE responded that there were sedentary level jobs that the person could perform, with at least half a million existing in the national economy. (Id.).

8

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

Mr. Troxtle alleged disability due to a crushed left heel, arthritis in the ankle and knees, and hearing loss, and initially alleged an onset date in April, 1995, when the injury to his heel had occurred. (Tr. 89, 113, 335). However, he amended the onset date to March 15, 2000, admitting that he had returned to work until that date. (Id.). He testified that he was unable to work because of pain in the left foot and heel, pain in the knees, poor hearing due to a congenital hearing loss, and anxiety attacks.

The plaintiff's primary argument on appeal is that the ALJ failed to accept functional restrictions given by Dr. DeGnore, the surgeon who had performed an open reduction and internal fixation of the left calcaneus in 1995. (Tr. 365). Dr. DeGnore did not see the plaintiff between 1996 and 2002, when he requested but did not receive narcotic pain medication. (Tr. 211-12, 436). Due to the lack of recent treatment, and the lack of objective findings in the surgeon's office notes, the ALJ ultimately refused to accept Dr. DeGnore's restrictions. (Tr. 296-7). However, as previously noted, the ALJ included Dr. DeGnore's limitations in an alternative hypothetical question, and the VE answered that there were still jobs available. Therefore, the question of which set of physical restrictions to accept is moot.

9

The plaintiff asserts that the ALJ should have accepted the psychological restrictions given by a counselor at the Adanta mental health care clinic, where Mr. Troxtle had sought treatment beginning in June, 2002 after being referred by his lawyer for a disability evaluation. (Tr. 271). The staff psychiatrist gave Mr. Troxtle an initial diagnosis of an anxiety disorder, a depressive disorder, and "rule out" alcohol dependence. (Tr. 274). He assigned a Global Assessment of Functioning (GAF) score of 55, reflecting "moderate" impairments per the Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition-Text Revision), p. 34. A "licensed professional clinical counselor," Rebecca Lawless, completed a mental functional capacity assessment two months later stating that Mr. Troxtle had a "seriously limited but not precluded" ability to deal with the public, interact with supervisors, deal with stresses, maintain attention and concentration, handle detailed and complex job instructions, behave in an emotionally stable manner, and relate predictably in social situations. (Tr. 293-5). However, the restrictions were partly based on the plaintiff's difficulty in hearing (Tr. 294), and the ALJ rejected the assessment because a hearing loss was not in the realm of a mental status restriction (Tr. 25). In addition, the Court notes that a "licensed professional clinical counselor" is not an acceptable source under the Commissioner's regulations. 20 C.F.R. Sections 404.1513, 416.913. Therefore, the ALJ's decision to accept the

10

mental restrictions given by Dr. Maryman (Tr. 190-6) is supported by substantial evidence.

The plaintiff asserts that he meets the Commissioner's Listing of Impairment Section 1.02, titled "major dysfunction of a joint(s) (due to any cause)," which requires a claimant to show "gross anatomical deformity . . . and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint, and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis . . . [w]ith . . . [i]nvolvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b." Section 1.00B2b contains an extensive discussion of "effective ambulation," but it includes the capability of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living, such as shopping and banking. No physical examiner suggested that the plaintiff's gait was that severely restricted. (Tr. 199,227, 257, 386-7, 438). Moreover, no physician opined that the plaintiff's impairment was of Listing level severity.

The plaintiff additionally argues that the ALJ improperly evaluated his impairments in combination, but a review of the administrative decision shows that the ALJ's discussion was adequate in this regard. See Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). The ALJ's assessment of

11

Troxtle

the plaintiff's subjective complaints of pain (Tr. 27) was adequate under the test set out in Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 852-3 (6th Cir. 1986). His discussion and assessment of the plaintiff's credibility was also adequate. It was reasonable to question Mr. Troxtle's credibility in light of his admitted history of drug and alcohol use, as well as his admitted capacity to return to construction work for some years after his heel injury. (Tr. 27).

Finally, the plaintiff argues that the ALJ's hypothetical question was insufficient because it did not list all of his "individual physical and mental impairments" in combination, citing Howard v. Commissioner of Social Security, 276 F. 3rd 235, 238-9 (6th Cir. 2002). However, for the reasons listed above, the Court finds that the hypothetical question accurately described the totality of the plaintiff's actual medical limitations. See Webb v. Commissioner of Social Security, 368 F.3d 629, 632-3 (6th Cir. 2004).

The decision will be affirmed.

This the ___23___ day of June, 2005.

G. WIX UNTHANK
SENIOR JUDGE

12